## William H. Flint & wife *vs.* Gloucester Gas Light Company.

A gas light company, which has no charge of the pipes or fixtures inside of the meters in the buildings to which it furnishes gas, is not made responsible in damages for an injury caused by an explosion of gas in a room into which it had escaped by reason of negligence in letting it on, before the end of a gas pipe leading into the room was closed, merely by having uniformly permitted without objection the person employed by gas consumers to put in such pipe and fixtures to let on the gas after so doing; and such permission is not sufficient to constitute such person an agent of the company, for whose acts it is responsible. And, in an action against a gas light company for an injury so caused, a verdict for the plaintiff will be set aside for an omission so to instruct the jury, in compliance with the request of the defendants, although the judge instructed them that if the defendants merely allowed or permitted such person to turn on the gas, or merely consented to his doing so, they would not be liable, if he, in the same connection, added the further instruction that the defendants would not be liable for such person's act in turning on the gas, unless he was authorized to turn it on by an appointment or agency for them, and in so doing was acting in their employment.

Tort against a gas light company, to recover damages for an injury to the female plaintiff from an explosion of gas.

At the trial in the superior court, before *Allen*, C. J., it appeared that Mr. Flint was the owner of a new house in Gloucester, and that he employed and paid one Thomas to put gas pipes therein, connected with a service pipe which had been laid for the purpose by the defendants; and to put up and arrange the fixtures and burners necessary for using gas in some of the rooms. In one room, however, no fixtures were put, and no cap was kept over the end of the pipe which opened into it. After adjusting such fixtures as he was employed by Flint to put up, Thomas examined all of the rooms except the one mentioned above, to see if the pipes were tight and safe, and then turned on the gas, and lighted up the house, and went away; and a few hours afterwards the female plaintiff, with a lighted candle, entered the room referred to, into which the gas had been escaping freely from the time it was let on, and an explosion took place, which caused the injury complained of.

Thomas had for several years been the defendants' superintendent and agent but ceased to be so before the acts which

led to this explosion; he was, however, the only gas-fitter in Gloucester, and continued as before to turn on the gas in all cases, with the knowledge of the company and without any objection on their part, down to the time in question. This was not done by the request of the superintendent, or of any other officer of the company, but it was with the superintendent's knowledge, and without objection from him; and he collected the bills for the gas after it was so turned on. It was the defendants' business to let on the gas, and no one except them, or some one acting by their authority or consent, had any right to do so, and they had entire control of this matter; and it was the duty of the person who let on the gas to make in advance a careful examination of the pipes all over the house, to see that they were tight, before turning on the gas. Certain other facts in evidence are stated in the opinion.

The plaintiffs contended that Thomas was the agent of the defendants for turning on the gas, in supplying it to consumers, and that he acted as such agent in turning on the gas in this case. The defendants denied that he was their agent, and requested the court to give the following instructions: 1. Inasmuch as Thomas was employed by the plaintiff William H. Flint to put on and adjust his gas fixtures, and for that purpose was not the agent of the defendants, it would be, as a matter of law, such negligence on his part, in leaving one of the pipes open, while acting for Flint, that the plaintiffs cannot recover; 2. If the defendants never assumed in fact to furnish or interfere with the pipes inside of the meters in the buildings to which they furnished gas, or with furnishing or regulating the gas fixtures, but uniformly permitted without objection the person who had been employed by gas consumers to furnish and put in and up such pipes and fixtures, to let on the gas fter so doing, the defendants would not by such permission be liable, as a matter of law, for the act of such person in letting on the gas before he had properly secured all the pipes and fixtures; and such permission would not be sufficient to constitute such person an agent of the defendants, for whose acts they would be responsible; 3. It being admitted or testified

by Flint and all his witnesses called to that part of the case, that it was his business to furnish all the gas pipes of the house inside of the meter, and that he assumed to do so, if the defendants authorized and permitted the agent employed for this purpose by him, to let on the gas without sufficiently securing the outlet of a portion of such pipes, the plaintiffs cannot recover for such act of the person so employed by him; 4. If the explosion was the result of the negligence of Thomas, while acting as agent of the defendants, and if his negligence while acting as agent of Flint, that is, if the negligence of Flint's agent, in furnishing and putting up the pipes and fixtures for him, contributed to the accident, the plaintiffs cannot recover.

The judge instructed the jury that the burden was on the plaintiffs to satisfy them that Thomas was the agent of the defendants in letting on the gas on the occasion in question, and that it was their duty to see that the pipes were in a suitable condition to hold the gas and to prevent the escape thereof by which the injury in question was caused; and that if Thomas was their agent to let on the gas, and to see before it was so let on that the pipes were in a suitable condition to receive and hold it, taking care that the caps or stoppers were closed, and if he did let on the gas, neglecting to see that the pipes were closed and the caps on, and by reason of such neglect the flow of gas and the injury complained of were caused, the defendants were liable. The judge further ruled that the injury complained of must have been caused entirely by the negligence of the defendants, without any admixture of the negligence or fault of the plaintiffs or either of them, and substantially adopted the fourth ruling requested, with certain explanations and illustrations which were not objected to, and ruled that if the defendants merely allowed or permitted Thomas to turn on the gas — if they merely consented to his doing so — the defendants would not be liable, though the plaintiffs suffered injury by his negligence in turning it on, and that the defendants would not be liable for his act in turning on the gas unless he was authorized to turn it on by an appointment or agency from them, and in

so doing was acting in their employment. And the judge did not otherwise rule as requested by the defendants.

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*J. G. Abbott*, for the defendants.

*J. C. Perkins*, for the plaintiffs.

MERRICK, J. The statement of the law by the court in relation to the liability of the defendants for the acts of their agents appears to have been accurate and unexceptionable. And the jury were correctly advised that the burden of proof to establish the alleged fact that Thomas was their agent in letting on the gas upon the occasion in question was upon the plaintiffs. So also it was properly ruled that the defendants were not liable for any injury resulting from his negligence in turning on the gas, if they merely permitted or consented to his doing it. But to this ruling, and in immediate connection with it, and thus obviously intended in some degree to affect and modify what had already been said upon the subject, it was added, that the defendants would not be liable " unless he was authorized to turn it on by an appointment or agency from them, and in so doing was acting in their employment."

Under these rulings, the question concerning the alleged agency of Thomas appears to have become of paramount importance in the case. The defendants insisted that he was not their agent, or in their employment, but had only in this, as in other instances, been permitted without objection on their part to let on the gas for the convenience' and accommodation of consumers. And in reference to this claim on their part, and as to what is sufficient to constitute an agency, they requested the court to rule, that if the gas company had never assumed, in fact, to furnish or interfere with the pipes inside of the meters in the buildings to which they furnished gas, or with furnishing or regulating the gas fixtures, but had uniformly permitted, without objection, the person who had been employed by gas consumers to furnish and put up such pipes and fixtures to let on the gas after furnishing and putting them in, such permission would not constitute him an agent of the

company, for whose acts it would be responsible. The court did not comply with the request, but declined or omitted to give such instruction to the jury.

This proposition contains, in relation to the facts embodied in the defendants' request, a correct statement of the law upon the subject. A person may be shown to be an agent by direct proof of his appointment by the principal; or the agency may be inferred from the relation of the parties and the nature of the employment, or from other sufficient facts and circumstances; or may be established by proof that if originally assumed without authority it was subsequently known, approved of and ratified by the principal. But in all cases, whether the evidence is direct or circumstantial, it will be sufficient to show that the principal employed the agent and that the agent undertook the trust, or that a person having assumed to do an act as an agent, the principal afterwards adopted and ratified it as his own. 2 Kent Com. (6th ed.) 614. To constitute an agency therefore there must be employment, or authority given, or some confirmation of acts already done, by the party to be charged as principal. The mere consent or permission that another person may, for the convenience or accommodation of one who employs him, do certain acts which the principal has a right, or is even upon request bound, to do himself, is not sufficient. To create an agency, employment is essential; the thing to be done, or which is done, must be for and on account of another person, who authorizes it in advance, or adopts it by subsequent ratification. If he neither gives previous authority, or subsequently assumes or confirms it as his own, but simply allows something to which, if he had seen fit, he might have interposed a conclusive objection, to be done at the request of others without objection from him, he has thereby assumed no responsibility nor made himself liable under any contract, express or implied, of agency.

The instruction thus asked for by the defendants was very pertinent to the facts developed upon the trial; and, considering the particular question to be determined, was essential, as a proper explanation of the law upon the subject, to guide and

assist the jury in their deliberations. It is certainly possible that they may have been misled, or have arrived at an erroneous conclusion, through the want of instructions specially applicable to the facts found in relation to the manner in which an agency might be legally created, or subsequently recognized, adopted and confirmed by some third party as a principal. The defendants denied that Thomas stood to them in any such relation, or that they had ever employed or authorized him in their behalf to let on the gas, or had ratified his act in doing so as their own. The evidence stated in the bill of exceptions shows that they did from time to time, and without making any objection, suffer and permit him, in all cases where he had supplied and put in the pipes and fixtures, to let on the gas whenever the consumers were ready and desired to use it; but it shows also that this was not done at the request of any officer of the company, or on their account; and therefore that it must have been done as well upon the responsibility as at the request of those by whom he was employed. The testimony in the present case was conflicting upon the question whether the superintendent of the gas company, or any one else of its officers or acknowledged agents, had been informed, or had any knowledge, that the plaintiff was in other respects ready to light up his house, or desired either before or at the time when it was done by Thomas that the gas should be let on. It was not claimed that there was any direct proof of the alleged agency but the plaintiffs contended that it might fairly and justly be inferred from the circumstances shown by the evidence. In this particular aspect of the case, where the exact question at issue was, whether Thomas acted in the employment, and as the agent, of the defendants, or merely by their permission and consent, at the solicitation and while he was in the service of the plaintiffs, the instruction asked for was not only pertinent and suitable, but was essential to the protection of the rights of the defendants, if they should succeed in establishing the truth of the facts stated in the proposition upon which their request was predicated. It should therefore have been given; and because it was withheld, the exceptions of the defendants' must be sustained. *Exceptions sustained.*